UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO.: 6:24CR008 |
| v. ) | |
| ) | |
| WALTER JOEY DREW, ) | |
| Defendant. ) | |

### SENTENCING MEMORANDUM

Mr. Drew submits this Sentencing Memorandum for the purposes of assisting the Court in fashioning a sentence under 18 U.S.C. § 3553(a) that is, in fact, "sufficient but not greater than necessary to comply with the purposes" of § 3553. Mr. Drew respectfully submits that a sentence of fifteen (15) years satisfies all requirements that the Court must consider when determining an appropriate sentence.

### I. INTRODUCTION

Walter "Joey" Drew, 42 years of age and will be 43 on August 27, 2025. He was born in Swainsboro, Georgia. He was raised in Kite, Georgia by both of his parents, who are still married. Mr. Drew attended Johnson County High School in Wrightsville, Georgia, where he performed well academically and graduated in 2000. Mr. Drew continued his education at Brewton-Parker College in Mount Vernon, Georgia, where he was a member of the varsity baseball team throughout all four years of college. He earned a bachelor's degree in Sport and Fitness in May of 2007.

In July of 2007, Mr. Drew married Ashley Drew. Together, they had two children, Easton Drew (17) and Oakley Drew (16). From 2008-2019, Mr. Drew worked as a police officer in

various cities. Additionally, Mr. Drew worked nightlife security to supplement his income and to provide financially for his family. Motivated by his passion for fitness and his background as a college athlete, Mr. Drew opened Legacy Performance Center, a gym in Lyons, Georgia in 2020. Mr. Drew remained married to Ms. Drew until October 2023. Despite his arrest and the difficulty of the past few years, Mr. Drew maintains a close relationship with both of his children and his parents.

## II. THE OFFENSE OF CONVICTION AND PRESENTENCE REPORT

The investigation of Mr. Drew began in September of 2022 after a victim's father reported conversations between Drew and the victim to the Evans County Sheriff's Office. The Evans County Sheriff's Office then contacted Homeland Security Investigations to assist with the investigation. Homeland Security agents posed as the victim using her Snapchat account and directly messaged with Mr. Drew. During the undercover communication, Mr. Drew discussed his sexual fantasies involving the victim.

Homeland Security agents learned that Mr. Drew had been arrested in Cleveland, Georgia in August of 2023 and that a search warrant of Mr. Drew's phone had been executed. On the phone were images and videos of partially nude or fully nude females, and some of the images were taken in or near a tanning bed. Homeland Security determined that the images were taken Drew's tanning bed room at the gym he owned in Lyons, Georgia.

On April 30, 2025, Mr. Drew appeared and pled guilty to Counts 11, 12, and 13 of the Indictment, in accordance with the written plea agreement. The presentence report groups Counts 11 and 12 together pursuant to U.S.S.G. § 3D1.2(b) and finds that the base offense level is 32. A total of 4 level enhancements are applied for an adjusted offense level of 36. *See* PSI ¶¶ 27-36. The presentence report calculates the base offense level of Count 13 to be 22. After 3 level

enhancements, the report finds the adjusted offense level to be 25. *See* PSI ¶¶ 37-42. After adjusting the multiple counts, the report calculates the total offense level to be 38. *See* PSI ¶¶ 43-48. He has a criminal history category of II. The guideline imprisonment range is 262 to 327 months.

### III.  GOVERNING PRINCIPLES

Following the United States Supreme Court's decision in *Booker,* the Sentencing Guidelines are no longer mandatory, but are, rather, advisory and a "starting point" in the Court's determination. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38, 45 (2007). As a result of this decision, a court commits error when it treats the Sentencing Guidelines as mandatory. *Henry v. United States*, 1 F.4th 1315, 1322 (2021). Post-*Booker*, sentencing courts have broad discretion to tailor a sentence to the specific circumstances of the individual, and courts should not presume that the range set forth in the Guideline is reasonable. *Gall*, 552 U.S. at 38, 50. This requires an "individualized assessment" of the facts and considerations set forth in 18 U.S.C. § 3553(a). *Id*. at 50.

Under 18 U.S.C. § 3553(a), sentencing courts must impose a sentence "sufficient, but not greater than necessary" based on the considerations and factors listed in the statute. Among the factors a court must consider are the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to deter future criminal conduct; the need for the sentence to reflect the seriousness of the offense; and the need for effective treatment and training. 18 U.S.C. § 3553. In addition to these factors, a court may consider any information about an individual's background or conduct that contributes to a more holistic understanding of the individual and their specific circumstances.

## IV. THE LEGISLATION CONCERNING MINIMUM MANDATORY SENTENCES AND GUIDELINES ENHANCEMENTS SHOULD BE GIVEN MINIMAL OR NO WEIGHT

There is much criticism surrounding the Sentencing Guidelines, particularly in relation to U.S.S.G §§ 2G2.1-.2 and child pornography cases. Since the Commission's completion of the original guidelines in 1987, U.S.S.G §§ 2G2.1-.2 have undergone considerable change due to demands from Congress. Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flowed Progression of the Child Pornography Guideline*. Over the years, Congress has rejected the Sentencing Commission's empirical approach to child pornography sentencing and has increased the base level for child pornography offenses, added enhancements which increase the offense level, and increased the statutory penalties. *Id*.

The enhancements introduced by Congress operate in a way that contradicts the purpose of the guidelines. *Id*. Because the enhancements apply in almost every child pornography case, the guidelines fail to distinguish between the most and least culpable offenders. *Id*. This provides little guidance for sentencing judges attempting to construct a sentence that is sufficient, but not greater than necessary. The Sentencing Guidelines and mandatory minimum sentences are not based on empirical data, nor do they consider the recommendations of the Sentencing Commission. The guidelines should, therefore, be given little or no weight in this Court's determination of an appropriate sentence.

## V. REQUESTED SENTENCE

Make no mistake, the actions here are reprehensible. Without undermining the serious nature of Mr. Drew's offenses, his conduct should be distinguished from the offenses detailed in

much child pornography case law. Mr. Drew is a "peeping tom" who chose to keep mementos of what he saw. Here, Mr. Drew did not distribute, publish, or exchange explicit images. There were no secret stashes of other illicit materials or salacious google searches. He did not engage in the trading of images which contributes to the industry and leads to further abuse. Mr. Drew's offenses did not involve prepubescent minors or infants. No one was physically harmed. Mr. Drew does not seek to minimize his conduct, but these distinctions are significant when tailoring a sentence that is sufficient, but not greater than necessary, to prevent future misconduct.

A holistic and individualized assessment of the facts confirm that a downward variance from the advisory sentencing guideline range is appropriate in this case. A sentence of fifteen years fulfills the requirements of section 3553 while still recognizing the seriousness of the offense. Moreover, the proposed sentence is not unusually lenient, and the punishment is adequate to prevent future misconduct.

## VI. THE SECTION 3553 FACTORS

A. **Mr. Drew's history and characteristics**.

The support an individual receives from their family is an important consideration when determining an appropriate sentence, as strong family support increases the likelihood that an offender will become a productive and non-threatening member of society. Mr. Drew has received consistent support from his family, and he has maintained a close relationship with them even after his arrest. After completing the sentence that this Court imposes, Mr. Drew plans to reside with his parents in Kite, Georgia. By residing with his parents, Mr. Drew will receive constant support and accountability throughout his transition and rehabilitation.

Mr. Drew suffers from anxiety and depression, and, prior to his arrest, he was prescribed medicine for his anxiety. He also attended therapy in an attempt to improve his mental health. Mr. Drew's mental health is unlikely to be adequately treated while incarcerated; however, upon release, Mr. Drew seeks to resume therapy and to participate in other forms of treatment beneficial to his rehabilitation.

Additionally, Mr. Drew's background displays his history of stable employment and hardworking character. Upon completion of this sentence, Mr. Drew plans to keep himself engaged in productive endeavors by obtaining a job and maintaining a full schedule so that he may become a contributing member of society. While incarcerated, Mr. Drew has obtained certification in prisonary evangelistic studies through Guido Bible College in Metter, Georgia.

Early on in his incarceration, Mr. Drew saved an inmate from killing himself. In the process Mr. Drew was stabbed several times in the hand. The female officers on duty were unable to stop the inmate from harming himself and Mr. Drew subdued the other inmate until male officers arrived.

As can be seen by the letters submitted by other inmates, Mr. Drew has become a beacon of hope to those around him. Through his incarceration it is Mr. Drew's sincerest hope that he can help change the lives of others making a positive impact in an attempt to atone for his wrongs. Mr. Drew has been in C pod for approximately four months as of the writing of this memo. During his time there, there have been zero fights amongst the other inmates in the pod. Some attribute this to the positivity and inspiration brought by Mr. Drew.

It should also be recognized that Mr. Drew has not only accepted responsibility for the offense but has expressed remorse and regret. Mr. Drew has not sought to take this case to trial.

### B. The need for the sentence to deter future criminal conduct and to reflect the seriousness of the offense.

A sentence of fifteen years is not only substantial enough to serve as a deterrent, but it also reflects the seriousness of the offense. A fifteen-year sentence is a significant period of time and would act to deter Mr. Drew and other potential offenders from engaging in future criminal acts. This proposed sentence both recognizes the seriousness of the offense and conveys to society the severe consequences for violations of the law.

### C. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Recently, here in the Southern District, an Assistant U.S. Attorney agreed to a *recommended cap* of 120 months imprisonment for a defendant found to be in possession of, and to have distributed some of the most disgusting and heinous child pornography imaginable. *See United States v. Wagner*, No. 3:23-cr-00005-1 (S.D. Ga. Dublin Div. filed 2023). The images in the case at bar are very distinguishable. Here there are no infants or toddlers forced to participate in explicit and harmful sex acts. While the possession and taking (production) of unlawful images is a serious matter, it is critical to recognize that the material in this case was not broadcast or otherwise distributed for others to consume. The images remained in the defendant's possession and were never made available to the broader public or to those who might deliberately search for such material.

### VII.  CONCLUSION

By viewing the whole of Mr. Drew's offense, the seriousness of Mr. Drew's conduct is not minimized. Mr. Drew deeply regrets his actions and seeks to accept responsibility for his conduct

and the consequences that follow. A sentence of fifteen years acknowledges the seriousness of Mr. Drew's offense, ensuring that he will become a healthy, contributing member of society upon release. For the reasons stated, Mr. Drew respectfully requests that this Court impose a sentence of fifteen years concurrent with any other sentence.

Respectfully submitted this __5th__ day of September, 2025.

LAW OFFICE OF TINA E. MADDOX, LLC

*/s/ Tina E. Maddox*
Tina E. Maddox
Attorney for Defendant
State Bar No. 465511

*For the Firm*
*LAW OFFICE OF TINA E. MADDOX, LLC*
*P.O. Box 1343*
*Vidalia, GA 30475*
*(912) 537-3025*
*(912)537-0264 (fax)*
*tinam13@bellsouth.net*

## CERTIFICATE OF SERVICE

This is to certify that on September 5, 2025, I electronically filed the within and forgoing Sentencing Memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

                                           LAW OFFICE OF TINA E. MADDOX, LLC

                                           /s/ Tina E. Maddox
                                           Tina E. Maddox
                                           Attorney for Defendant
                                           State Bar No. 465511

*For the Firm*
*LAW OFFICE OF TINA E. MADDOX, LLC*
*P.O. Box 1343*
*Vidalia, GA 30475*
*(912) 537-3025*
*(912)537-0264 (fax)*
*tinam13@bellsouth.net*